**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

ELLA SHAULOVA,

Plaintiff,

vs.

BLESSING INVESTMENT GROUP LG, LLC AND DAN BLESSING,

Defendants.

Case No.: 1:26-CV-06057

**CLASS & COLLECTIVE ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL**

Plaintiff Ella Shaulova ("Plaintiff"), by and through her attorneys, Sage Legal LLC, on behalf of herself and the proposed classes identified below, alleges upon personal knowledge as to herself and upon information and belief as to all other matters as follows:

**INTRODUCTION**

1. This action arises from Defendants' failure, after taking control of the CoolFrames optical business in or about December 2025, to honor and administer Plaintiff's earned and legally protected paid sick leave and other promised paid-time-off benefits, to pay all compensation due for work performed, and from Defendants' termination of Plaintiff after she complained about those practices and attempted to exercise protected wage-and-leave rights.

2. Plaintiff worked as an optician in Brooklyn, New York.

3. She returned to the CoolFrames business in or about October 2024 after an approximately one-and-one-half-year absence and remained employed through approximately June 2026.

4. On or about December 15, 2025, the corporate Defendant acquired and assumed operational control over the CoolFrames business and thereafter controlled the employment, payroll, paid-time-off ("PTO"), and sick-leave policies applicable to Plaintiff and others.

5. Shortly after Defendants assumed control, Plaintiff encountered a material change in the administration of leave.

6. Although Defendants approved and paid Plaintiff for PTO used on January 2, 2026, when she sought to use sick leave on January 9, 2026 for a qualifying purpose, Defendants informed her that sick leave and PTO required Defendants' approval and referenced New York's one-hour-per-thirty-hours-worked accrual rule.

7. Defendants thereafter announced a PTO structure of five (5) days per four (4) month period, or fifteen (15) days annually, but failed to administer Plaintiff's statutory sick leave and promised PTO consistently with applicable law and Defendants' own policies.

8. Among other things, Defendants failed to properly credit or carry over accrued sick leave, denied or restricted its use, failed to pay sick leave that Plaintiff used, and required Plaintiff to use vacation/PTO in place of protected sick leave, thereby depleting a separate paid-leave benefit.

9. Plaintiff also experienced delays and/or shortfalls in compensation for compensable work actually performed.

10. She complained to Defendants about not being paid all compensation due for her work, about the loss and nonpayment of earned leave, and about Defendants' refusal to honor her sick-leave rights.

11. Rather than correct the practices, Defendants ignored Plaintiff's complaints and thereafter terminated her employment in or about June 2026, characterizing the discharge as a layoff and stating that they were no longer operating in Brooklyn.

12. Plaintiff has therefore commenced this case to vindicate her rights under federal, state, and local law, as applicable.

13. Plaintiff specifically seeks relief under the Fair Labor Standards Act ("FLSA") for retaliation, the New York Labor Law ("NYLL") for unpaid wages, benefits and wage supplements, paid sick leave, retaliation, and wage-notice/wage-statement violations, and under the New York City Earned Safe and Sick Time Act for denial and interference with protected sick leave and retaliation.

14. Plaintiff also seeks class relief under Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") for the common New York and New York City wage-and-leave practices described below.

**JURISDICTION AND VENUE**

15. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a retaliation claim under the FLSA, 29 U.S.C. §§ 215(a)(3) and 216(b).

16. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related claims arising under New York State and New York City law because those claims form part of the same case or controversy as Plaintiff's federal claim.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in Brooklyn, New York, where Plaintiff worked for Defendants.

18. At all relevant times, Plaintiff performed non-exempt work for Defendants in New York and within this District.

19. Upon information and belief, Defendants operated an enterprise engaged in interstate commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s), including by selling eyewear and related goods that moved in interstate commerce, and had annual gross volume of sales or business of at least $500,000.00.

20. Plaintiff also personally handled, sold, processed, or worked with goods, materials, communications, payment systems, and instrumentalities that had moved in or affected interstate commerce.

**PARTIES**

21. At all relevant times, Plaintiff was and is an adult individual and resident of Kings County, New York.

22. During the relevant period she worked for Defendants as an optician in Brooklyn, New York.

23. Corporate Defendant Blessing Investment Group LG, LLC ("Blessing Investment") is a limited liability company that conducts business in New York and, beginning in or about December 2025, operated and/or controlled the CoolFrames optical business at which Plaintiff worked.

24. Individual Defendant Dan Blessing ("Blessing") is, upon information and belief, a principal, chief executive, owner, and/or authorized official of Blessing Investment and exercised operational control over the business and its employees.

25. Upon information and belief, Blessing possessed and exercised authority to hire and fire employees, supervise and control work schedules and conditions of employment, determine wage and leave policies and methods of payment, and maintain or direct the maintenance of employment records.

26. Corporate Defendant and Blessing acted directly and indirectly in the interest of an employer in relation to Plaintiff and are employers and/or persons subject to liability under the statutes invoked in this Complaint.

27. At all relevant times, Defendants acted jointly and in concert with respect to the payroll, leave, recordkeeping, and termination practices alleged herein.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Defendants' Acquisition of the Business

28. Plaintiff previously worked for the CoolFrames business for several years.

29. After leaving for approximately one and one-half years, she returned in or about October 2024 and resumed work as an optician.

30. As an optician, Plaintiff performed customer-facing and optical-service duties for the business and was paid as an employee rather than operating an independent business of her own.

31. On or about December 15, 2025, Defendants acquired the CoolFrames business and assumed control over its management and employment policies.

32. Plaintiff continued working at the same Brooklyn operation following Defendants' acquisition, without a material interruption in the services she performed for the business.

33. After the acquisition, Defendants controlled the policies governing Plaintiff's timekeeping, payroll, paid time off, sick leave, approval of absences, and continued employment.

### B. Paid Sick Leave and PTO Practices

34. New York law requires covered employers to provide sick leave and, for employers of Defendants' size, paid sick leave, at a rate of not less than one (1) hour for every thirty (30) hours worked, subject to the applicable annual statutory cap and carryover requirements.

35. New York City law likewise required covered employers to provide employees working in New York City with protected safe/sick time and to permit such time to be used for qualifying purposes, subject only to lawful notice and documentation requirements.

36. An employer may satisfy sick-leave obligations through a broader PTO policy only if the PTO policy provides at least the required amount of leave and permits accrual, carryover, use, and payment on terms that are at least as protective as the statutory sick-leave requirements.

37. On January 2, 2026, shortly after Defendants assumed control, Plaintiff used PTO that Defendants approved and paid.

38. One week later, on January 9, 2026, Plaintiff sought to use sick leave for a purpose protected by New York State and New York City law.

39. Defendants did not simply process Plaintiff's available protected sick leave as required by law.

40. Instead, Defendants informed Plaintiff that PTO and sick days required their advance approval and stated that, under New York law, employees had to work thirty (30) hours to accrue one hour of sick time or PTO.

41. By expressly invoking the one (1) hour per thirty (30) hours worked standard, Defendants demonstrated awareness that Plaintiff's sick-leave entitlement was governed by law, yet treated the use of that protected leave as discretionary.

42. Defendants subsequently proposed or implemented a PTO structure providing five (5) days of PTO per four (4) month period, totaling fifteen (15) days annually, with limited flexibility as to use, which Plaintiff believed violated the law.

43. Plaintiff objected to the new policy and told Defendants that the prior system allowed greater flexibility and that she was entitled to the paid leave and wage supplements she had earned.

44. Plaintiff accrued paid sick leave.

45. Defendants nevertheless failed to properly credit and/or carry over her accrued sick leave, refused to permit use of available sick leave for qualifying purposes, and failed to pay Plaintiff for sick leave that she took.

46. Defendants also required Plaintiff to charge qualifying sick absences against vacation or PTO rather than against the protected sick-leave balance to which she was entitled, thereby diminishing other paid leave available to Plaintiff.

47. Defendants failed to administer their broader PTO policy in a manner that satisfied the accrual, carryover, use, and payment requirements applicable to statutory sick leave.

48. Upon information and belief, Defendants applied the same or substantially similar leave policies and payroll practices to other employees, rather than creating an individualized policy unique to Plaintiff.

49. Upon information and belief, Defendants also failed to accurately disclose on Plaintiff's pay statements or other written pay-period documentation the amount of protected sick time accrued, used, and available, making it more difficult for Plaintiff to identify and correct the depletion and nonpayment of her protected leave.

**C. Unpaid and Delayed Compensation**

50. During the period after Defendants assumed control, Plaintiff also experienced failures to timely receive all compensation due for compensable work she actually performed.

51. Plaintiff complained that she was entitled to be paid for all work performed and to receive the wages, paid leave, and wage supplements that had been earned and promised.

52. Plaintiff's complaints were not limited to a preference about workplace policy; she asserted that Defendants were unlawfully withholding compensation and protected leave to which she was legally entitled and asked Defendants to correct those practices.

53. Defendants had actual or constructive knowledge of the hours Plaintiff worked, the leave she accrued and requested, and the compensation due to her because Defendants controlled or maintained the relevant schedules, payroll systems, leave records, and pay statements.

54. To the extent Defendants failed to maintain complete and accurate records of hours, compensation, and protected leave, the absence of those records was caused by Defendants and should not be used to defeat Plaintiff's claims.

**D. Plaintiff's Protected Complaints and Termination**

55. After enduring the foregoing practices for months, Plaintiff complained to Defendants about the failure to pay all compensation due for work performed, the failure to honor paid sick leave and PTO, and the failure to credit and pay wage supplements.

56. Plaintiff communicated that she believed she had a legal right to the compensation and leave at issue and sought payment and correction of Defendants' practices.

57. Plaintiff's complaints were sufficiently clear, in context, to place Defendants on notice that she was asserting wage-and-hour and protected-leave rights rather than merely expressing a workplace preference.

58. Defendants did not remedy the violations in response to Plaintiff's complaints.

59. Before the events described above, Plaintiff had performed her job satisfactorily and had not received discipline or negative performance feedback that would explain the termination alleged below.

60. After Plaintiff complained and attempted to exercise protected wage-and-leave rights, Defendants terminated her employment in or about June 2026.

61. Defendants characterized the termination as a layoff and told Plaintiff that they were no longer operating in Brooklyn, New York.

62. The termination occurred after and in temporal proximity to Plaintiff's repeated wage-and-leave complaints and her efforts to use protected sick leave.

63. As a direct result of Defendants' conduct, Plaintiff lost wages and benefits, lost the value of paid leave and wage supplements, suffered other economic losses, and incurred damages recoverable under the statutes identified below.

**E. Recordkeeping, Wage Notices, and Wage Statements**

64. Upon information and belief, when Defendants became Plaintiff's employer and assumed control over her wages and employment terms, Defendants did not provide Plaintiff with a complete and compliant written notice of pay rate and other information required by NYLL § 195(1)(a).

65. Upon information and belief, Defendants also failed to provide Plaintiff with accurate wage statements that fully and correctly reflected the hours and compensation for which she was paid and the wages actually due to her.

66. These notice and statement deficiencies caused concrete harm because they impeded Plaintiff's ability to determine the compensation Defendants were obligated to pay, identify the entity responsible for those payments after the change in ownership, reconcile payroll shortfalls, and timely challenge the underpayment and depletion of earned compensation.

67. The inaccurate and incomplete payroll and leave records likewise made it more difficult for Plaintiff to calculate the full amount of wages, paid leave, and wage supplements owed without discovery of Defendants' records.

**RULE 23 CLASS ACTION ALLEGATIONS**

68. Plaintiff brings her New York State and New York City wage-and-leave claims as a class action under Rule 23 on behalf of herself and the proposed classes described below.

Plaintiff's retaliation claims are asserted individually unless discovery establishes a common retaliatory policy affecting additional employees.

**A. Proposed Classes**

69. Plaintiff seeks to represent a "New York Wage and Leave Class" consisting of all current and former non-exempt employees who worked for Defendants in New York during the applicable limitations period and were subject to Defendants' common policies concerning payment of wages, paid time off, wage supplements, and paid sick leave.

70. Plaintiff also seeks to represent a "New York City Sick Leave Subclass" consisting of members of the New York Wage and Leave Class who worked within New York City and were subject to Defendants' common policies and practices concerning accrual, use, payment, carryover, and disclosure of protected safe/sick time.

71. Plaintiff further seeks to represent a "Wage Notice and Statement Subclass" consisting of members of the New York Wage and Leave Class who did not receive wage notices and/or wage statements compliant with NYLL § 195 and who suffered concrete harm from those deficiencies.

72. Excluded from the proposed classes are Defendants, their owners and officers, members of the judiciary and their staff to whom this action is assigned, and any person who timely and validly opts out of a Rule 23(b)(3) class.

**B. Numerosity**

73. The exact number and identities of class members are within Defendants' possession and can be determined from payroll and personnel records.

74. Upon information and belief, and consistent with information presently available to Plaintiff, Defendants employed approximately forty (40) employees during the last six (6) years,

and the proposed classes and subclasses are sufficiently numerous that joinder of all affected employees would be impracticable.

**C. Commonality and Predominance**

75. Questions of law and fact common to the proposed classes include, without limitation:

(a) whether Defendants maintained a common PTO and sick-leave policy after acquiring the CoolFrames business;

(b) whether Defendants failed to properly credit, carry over, permit use of, and/or pay statutory sick leave;

(c) whether Defendants required employees to use vacation or other PTO in place of protected sick leave;

(d) whether Defendants failed to pay promised wage supplements and benefits in accordance with their policies;

(e) whether Defendants failed to provide required safe/sick-time accrual, use, and balance information on pay statements or other pay-period documentation;

(f) whether Defendants failed to provide compliant wage notices and accurate wage statements;

(g) whether Defendants acted willfully and/or without a good-faith basis; and

(h) the appropriate measure of class-wide damages and statutory relief.

76. These common questions are capable of class-wide resolution through Defendants' policies, payroll records, leave records, notices, wage statements, and testimony concerning the uniform practices applied to employees.

77. Common issues predominate over individualized issues because liability turns principally on Defendants' common policies and records, while individual damages can be calculated mechanically from payroll and leave data.

**D. Typicality and Adequacy**

78. Plaintiff's claims are typical because she was subject to the same material wage, PTO, sick-leave, notice, and statement practices that she challenges on behalf of the classes.

79. Plaintiff's interests are aligned with those of the proposed classes, she has no known conflict with class members, and she intends to prosecute these claims vigorously.

80. Plaintiff has retained counsel experienced in wage-and-hour and employment litigation who are able to fairly and adequately represent the proposed classes.

**E. Superiority**

81. A class action is superior to individual litigation because the claims arise from common employment policies, the amounts at issue for individual employees may be too small to justify separate actions, and class treatment will avoid duplicative discovery, inconsistent rulings, and unnecessary burden on the parties and the courts.

82. The proposed class action is manageable because the identities of affected employees, their periods of employment, wages, leave accruals, leave usage, and payroll information are reflected in records Defendants were required to maintain.

## CAUSES OF ACTION

### COUNT ONE
### RETALIATION UNDER THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. §§ 215(a)(3) and 216(b) - Plaintiff Individually)

83. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

84. The FLSA prohibits an employer from discharging or otherwise discriminating against an employee because the employee filed or made a complaint asserting rights protected by the FLSA.

85. Plaintiff complained to Defendants that she was not receiving all compensation due for compensable work actually performed and that Defendants were unlawfully withholding wages and other earned compensation.

86. Viewed in context, Plaintiff's complaints were sufficiently clear and detailed to place a reasonable employer on notice that she was asserting statutory wage rights and seeking their protection.

87. Defendants knew of Plaintiff's complaints and thereafter terminated her employment.

88. Plaintiff's protected complaints were a motivating and/or but-for cause of the adverse action, as shown by the sequence of events, Defendants' failure to remedy her complaints, the absence of prior performance discipline, and the temporal relationship between her complaints and termination.

89. Defendants' retaliation was willful and was not based on a good-faith belief that the FLSA permitted retaliation against Plaintiff for asserting protected wage rights.

90. Under 29 U.S.C. § 216(b), Plaintiff is entitled to appropriate legal and equitable relief, including lost wages and benefits, an additional equal amount as liquidated damages, attorneys' fees and costs, and all other relief permitted by law.

**COUNT TWO**
**FAILURE TO PAY WAGES, BENEFITS, & WAGE SUPPLEMENTS UNDER THE NYLL**
**(NYLL §§ 190(1), 193, 198, and 198-c - Plaintiff and the New York Wage and Leave Class)**

91. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

92. NYLL Article 6 protects employees against the unauthorized withholding or failure to pay wages, benefits, and wage supplements. NYLL § 190(1) includes benefits or wage supplements within the statutory definition of wages, and NYLL § 198-c identifies vacation, holiday, and similar benefits as wage supplements.

93. Defendants maintained and communicated policies providing Plaintiff and class members with paid time off and other paid-leave benefits, including a post-acquisition PTO structure providing fifteen (15) days annually.

94. Plaintiff and class members earned rights to wages, benefits, and wage supplements under Defendants' policies and applicable law.

95. Defendants failed to fully and timely pay those earned wages, benefits, and wage supplements, including by failing to properly credit and honor earned paid leave and by charging protected sick absences against other PTO benefits.

96. Defendants' conduct was willful and was not based on a reasonable good-faith belief that the amounts withheld were lawfully forfeited or could be withheld.

97. Under NYLL § 198, Plaintiff and class members are entitled to recover unpaid wages, benefits and wage supplements, liquidated damages, prejudgment interest, attorneys' fees, costs, and other relief allowed by law.

**COUNT THREE**
**FAILURE TO PROVIDE AND PAY STATUTORY SICK LEAVE UNDER THE NYLL**
**(NYLL §§ 196-b and 198 - Plaintiff and the New York Wage and Leave Class)**

98. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

99. NYLL § 196-b required Defendants to provide covered employees with sick leave, including paid sick leave for employers of the applicable size, accrued at not less than one (1) hour for every thirty (30) hours worked unless lawfully frontloaded.

100. Section 196-b further required Defendants, upon an employee's oral or written request, to permit use of accrued sick leave for qualifying purposes, compensate paid sick leave at the employee's regular rate of pay or applicable minimum wage, whichever was greater, and carry over unused sick leave subject to statutory limits.

101. Defendants violated these requirements by failing to properly credit and carry over accrued sick leave, refusing or restricting Plaintiff's use of sick leave for a qualifying purpose, failing to pay sick leave that Plaintiff used, and substituting or depleting other vacation/PTO where protected sick leave should have been used.

102. Defendants could not avoid § 196-b by maintaining a broader PTO policy because their policy did not, as administered, satisfy the statute's accrual, carryover, use, and payment requirements.

103. Defendants applied the challenged leave practices on a common basis to Plaintiff and other covered employees.

104. Plaintiff and class members are entitled under NYLL § 198 and other applicable provisions to recover unpaid compensation, liquidated damages where available, prejudgment interest, attorneys' fees and costs, and other appropriate relief.

**COUNT FOUR**
**RETALIATION UNDER THE NEW YORK LABOR LAW**
**(NYLL § 215 - Plaintiff Individually)**

105. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

106. NYLL § 215 prohibits an employer, its agents, officers, and other persons from discharging, penalizing, or otherwise retaliating against an employee because the employee complained in good faith about conduct reasonably believed to violate the Labor Law, exercised rights protected by the Labor Law, or used a legally protected absence.

107. Plaintiff engaged in protected activity by requesting and attempting to use statutory sick leave, objecting to Defendants' failure to credit and pay sick leave and PTO, and complaining that Defendants failed to pay compensation and wage supplements due to her.

108. Plaintiff was not required to cite a statutory section by number for her complaints to be protected, and her communications were sufficiently clear to alert Defendants to the substance of the alleged violations.

109. Defendants knew of Plaintiff's protected activity and thereafter terminated her employment.

110. Plaintiff's protected activity was causally connected to the termination, including because of the timing of the termination after her complaints and leave requests and the absence of prior disciplinary or performance grounds identified to Plaintiff.

111. Under NYLL § 215, Plaintiff is entitled to all appropriate relief, including lost compensation, front pay or reinstatement as appropriate, damages, liquidated damages of up to the statutory maximum, reasonable attorneys' fees and costs, and other relief authorized by law.

**COUNT FIVE**
**VIOLATION OF THE NEW YORK CITY EARNED SAFE AND SICK TIME ACT**
**(N.Y.C. Admin. Code §§ 20-913, 20-914, 20-919, and 20-924 - Plaintiff and the New York City Sick Leave Subclass)**

112. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

113. Plaintiff and the New York City Sick Leave Subclass were employees covered by the New York City Earned Safe and Sick Time Act because they performed work for Defendants within New York City.

114. The Act required Defendants to provide protected safe/sick time, including paid safe/sick time where applicable, at the required accrual rate or through a compliant frontloaded policy; to permit use for qualifying purposes; and to pay protected time at the required rate.

115. The Act further required Defendants to provide written information each pay period concerning protected time accrued and used and the employee's protected-time balance available for use.

116. Defendants violated the Act by, among other things, denying or restricting qualifying sick leave, failing to properly credit or carry over protected time, failing to pay protected time used, requiring Plaintiff to deplete other vacation/PTO instead of properly applying protected sick leave, and failing to provide accurate accrual/use/balance information.

117. These violations caused Plaintiff and subclass members to lose compensation and paid-leave benefits and impaired their ability to understand and exercise their protected-time rights.

118. Under N.Y.C. Admin. Code § 20-924(f), Plaintiff and subclass members may recover compensatory damages, statutory and other relief available under the chapter, attorneys' fees and costs, and such other relief as the Court deems appropriate.

**COUNT SIX**
**RETALIATION AND INTERFERENCE UNDER THE NEW YORK CITY EARNED SAFE AND SICK TIME ACT**
**(N.Y.C. Admin. Code §§ 20-918 and 20-924 - Plaintiff Individually)**

119. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

120. N.Y.C. Admin. Code § 20-918 prohibits adverse action that penalizes an employee for, is reasonably likely to deter an employee from, or interferes with an employee's exercise or attempted exercise of rights protected by the Earned Safe and Sick Time Act.

121. Plaintiff exercised and attempted to exercise protected rights by requesting sick leave for a qualifying purpose, objecting when Defendants refused to properly apply and pay protected leave, and challenging Defendants' administration of protected time.

122. Defendants interfered with those rights by treating protected sick leave as subject to discretionary approval, refusing or restricting its use, requiring substitution of other PTO, and failing to properly credit and pay protected leave.

123. Defendants thereafter took an adverse action by terminating Plaintiff's employment.

124. Plaintiff's exercise and attempted exercise of protected sick-leave rights was a motivating factor in Defendants' adverse action.

125. Under N.Y.C. Admin. Code § 20-924(f), Plaintiff is entitled to compensatory damages, lost wages and benefits, attorneys' fees and costs, and all other appropriate legal and equitable relief.

**COUNT SEVEN**
**FAILURE TO PROVIDE NOTICE OF PAY RATE UNDER THE NYLL**
**(NYLL §§ 195(1)(a) and 198(1-b) - Plaintiff and the Wage Notice and Statement Subclass)**

126. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

127. NYLL § 195(1)(a) requires covered employers to provide employees, at the time required by law, a written notice containing the employee's rate or rates of pay and basis thereof, regular payday, employer name, any d/b/a names, physical and mailing addresses, telephone number, and other required information.

128. Upon information and belief, Defendants failed to provide Plaintiff and similarly situated employees with a compliant notice when Defendants became their employer and assumed responsibility for their compensation and employment terms.

129. The absence of a compliant notice caused concrete injury because it obscured the identity of the responsible employer and the compensation terms governing Plaintiff after the

ownership change and impeded her ability to identify, calculate, and promptly recover compensation that was not properly paid.

130. Had Plaintiff been informed about her pay structure, she would have been better able to determine whether she was properly paid and determine how much leave entitlement she had for sick leave pay.

131. Plaintiff and affected subclass members are entitled to statutory damages to the extent permitted by NYLL § 198(1-b), together with reasonable attorneys' fees and costs and other appropriate relief.

**COUNT EIGHT**
**FAILURE TO FURNISH ACCURATE WAGE STATEMENTS UNDER THE NYLL**
**(NYLL §§ 195(3) and 198(1-d) - Plaintiff and the Wage Notice and Statement Subclass)**

132. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

133. NYLL § 195(3) requires covered employers to furnish a wage statement with each payment of wages containing, among other things, the dates of work covered, employee and employer names, employer address and telephone number, rate or rates of pay and basis thereof, gross wages, deductions, allowances, net wages, and additional information required for non-exempt employees.

134. Upon information and belief, Defendants failed to furnish Plaintiff and similarly situated employees with wage statements that accurately reflected the compensable time and wages for which payment was due.

135. The inaccurate and incomplete statements caused concrete harm by impairing Plaintiff's ability to identify payroll discrepancies, calculate the compensation she had not received, and timely seek correction of the shortfalls without access to Defendants' internal payroll records.

136. Plaintiff and affected subclass members are entitled to statutory damages to the extent permitted by NYLL § 198(1-d), together with reasonable attorneys' fees and costs and other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes and subclasses, respectfully requests that the Court enter judgment in her favor and grant the following relief:

(A) Declare that Defendants violated the FLSA, NYLL, and New York City law as alleged herein;

(B) Certify the proposed Rule 23 classes and subclasses, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

(C) Award Plaintiff and the classes all unpaid wages, benefits, paid leave, wage supplements, and other compensation due under applicable law;

(D) Award Plaintiff and the classes liquidated damages to the extent authorized by the FLSA and NYLL;

(E) Award Plaintiff all damages and other relief available for retaliation under 29 U.S.C. § 216(b), NYLL § 215, and N.Y.C. Admin. Code § 20-924, including lost wages and benefits, front pay or reinstatement as appropriate, and other compensatory relief;

(F) Award statutory damages for wage-notice and wage-statement violations to those class members who establish entitlement and Article III standing;

(G) Award prejudgment and post-judgment interest to the extent permitted by law;

(H) Award reasonable attorneys' fees, costs, and disbursements as authorized by the statutes at issue; and

(I) Grant such other and further legal or equitable relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38.

Dated: Flushing, New York
September 29, 2026

Respectfully submitted,
**SAGE LEGAL LLC**
*/s/ Emanuel Kataev, Esq.*

Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Ella Shaulova*
*and all others similarly situated*